UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID A. CROWL,

     Plaintiff,

v.                              Case No.:  6:21-cv-1789-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Plaintiff David A. Crowl seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.    Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

## B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v.*

*Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff filed an application for supplemental security income benefits on October 23, 2019, alleging disability beginning August 1, 1999. (Tr. 16, 70).[1] The

---

[1] The administrative transcript does not contain Plaintiff's SSI application. (Doc. 25, n.1).

application was denied initially and on reconsideration. (Tr. 70, 93). Plaintiff requested a hearing and on January 29, 2021, a hearing was held before Administrative Law Judge Angela Neel ("ALJ"). (Tr. 34-52). On March 8, 2021, the ALJ entered a decision finding Plaintiff not under a disability from October 23, 2019, the date the application was filed. (Tr. 16-28).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on September 17, 2021. (Tr. 2-6). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on October 27, 2021, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 20).

### D.    Summary of ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 23, 2019, the application date. (Tr. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: "obesity; degenerative disc disease of the lumbar spine; degenerative joint disease of the right knee with tear of the meniscus; depressive disorder; anxiety disorder with panic disorder; and nicotine dependence." (Tr. 18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 [C.F.R. §] 416.967(a) except limited to no climbing ladders, ropes, and scaffolds; occasional climbing ramps and stairs, kneeling, crawling, and crouching; frequent balancing and stooping; no work at unprotected heights and no operating a motor vehicle; mentally limited to simple tasks and making simple work-related decisions; frequent interaction with supervisors and coworkers; and occasional interaction with the general public.

(Tr. 21).

At step four, the ALJ found Plaintiff had no past relevant work. (Tr. 26). At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age (48 on the application date), education (limited), work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 26-27). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1)   document preparer, DOT 249.587-018,[2] sedentary, SVP 2

(2)   addresser, DOT 209.587-014, sedentary, SVP 2

(3)   assembler, small products, DOT 734.687-018, sedentary, SVP 2

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

(Tr. 27). The ALJ concluded that Plaintiff had not been under a disability since October 23, 2019, the date the application was filed. (Tr. 27).

## II.    Analysis

On appeal, Plaintiff raises two issues: (1) whether the ALJ applied the correct legal standards at step five of the sequential evaluation process related to an age category; and (2) whether the ALJ applied the correct legal standards to Dr. Marrero's opinion. (Doc. 25, p. 6, 12).

### A.    Borderline Age

Plaintiff argues that the ALJ erred in finding Plaintiff was a younger individual and instead should have placed him in a higher age category. (Doc. 25, p. 6-8). If the ALJ had placed Plaintiff in a higher age category, Plaintiff contends the Medical-Vocational Rule 201.09 directs a finding of disability. (Doc. 25, p. 8).

Under the regulations, SSA considers the chronological age of an individual in combination with the RFC, education, and work experience to determine an individual's ability to adjust to other work. 20 C.F.R. § 416.963(a). At the time of the decision Plaintiff was 49 years, six months, and eight days. (Tr. 26). If an individual is under the age of 50 – like Plaintiff here – he is considered a "younger person" under the regulations. 20 C.F.R. § 416.963(c). SSA generally does not consider that a younger person's age "will seriously affect [his] ability to adjust to other work." *Id.* In certain circumstances, SSA may consider whether individuals

aged 45-49 are more limited in their ability to adjust to other work than people younger than 45. *Id.*

The SSA will not apply age categories mechanically when a plaintiff's age is in a borderline age situation. SSA-POMS: DI 25015.005(E). To be in considered borderline, a plaintiff's age must be within a few days or a few months of a higher age category and the higher age category must result in a decision of disabled. HALLEX I-2-2-42(B). SSA "does not have a precise programmatic definition for the phrase 'within a few days to a few months.'" HALLEX I-2-2-42(B)(1). SSA generally "considers a few days to a few months to mean a period not to exceed six months." *Id.* While an ALJ will not apply age categories mechanically, he also will not use a higher age category automatically in a borderline age situation. HALLEX I-2-2-42(C). "ALJs will consider whether to use the higher age category after evaluating the overall impact of all the factors on the claimant's ability to adjust to doing other work (e.g., residual functional capacity combined with age, education, and work experience . . .)." *Id.* When considering age, the closer a claimant's age is to the next higher category, the more disadvantageous the claimant's age. SSA-POMS: DI 25015.006(E)(1)(a)-(d).

In the decision, the ALJ discussed Plaintiff's age category:

> **6.     The claimant was born on August 30, 1971 and was 48 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).**

It should be noted that the claimant is now forty-nine and a half years old. The regulations permit application of a higher age category where the claimant's age is within a few months of a higher age category, when use of the higher age category would result in a finding of disability, and the claimant has additional, progressive vocational adversity (HALLEX I-2-2-42). Arguably, six months is more than a "few months" prior to the claimant attaining age 50 and no additional, progressive vocational adversity is supported by the medical evidence of record. Accordingly, a non-mechanical application of the higher age category is unwarranted.

(Tr. 26)

Plaintiff raises two arguments regarding the borderline age category findings: (1) the ALJ misstated Plaintiff's age; and (2) the ALJ should have found at least one vocationally adverse factor. (Doc. 25, p.7-8). As to Plaintiff's age, Plaintiff claims that the ALJ erred in finding Plaintiff to be forty-nine and a half years old and instead should have noted that he would turn fifty in only five months and twenty-two days. (Doc. 25, p. 7). Thus, Plaintiff claims the ALJ's statement that "six months is more than a 'few months' prior to the claimant attaining age 50" is incorrect. (Tr 26, Doc. 25, p. 7). This argument is not well taken. In the decision, the ALJ noted Plaintiff's correct birth date. (Tr. 26). And arguably 49 years, six months, and eight days is another way to say 49 and half years old in general terms. In addition, the further a plaintiff is from the next age category, the less disadvantageous and Plaintiff was nearly six months from the next age category. Also, the ALJ did not ignore the potential for a higher age category here, but instead found it unwarranted. The Court finds no error, or if the ALJ erred, the error was harmless.

Plaintiff next argues that the ALJ erred in determining that "no additional, progressive vocational adversity is supported by the medical evidence of record." (Doc. 25, p. 8). Plaintiff claims that because he did not have any past relevant work and had not worked since 1999, this fact constitutes a progressive vocational adversity and supports a higher age category. (Doc. 25, p. 8).

The Court finds this argument unavailing. The ALJ recognized and determined that Plaintiff had no past relevant work. (Tr. 26). The ALJ also discussed Plaintiff's work history noting that Plaintiff had not worked since 1999, did not have a good work history, and earned a "very low lifetime of earnings of $24,874.00." (Tr. 25). The ALJ contrasted this work history with Plaintiff's relatively wide range of activities of daily living, including enjoying listening to music, making simple meals, watching television shows, and watching sports. (Tr. 25). The ALJ considered Plaintiff's lack of past relevant work and properly determined that it was not a progressive vocational adversity to warrant the use of a higher age category.

Both the ALJ and the vocational expert considered all the factors when determining whether Plaintiff would be able to adjust or adapt to other work. The ALJ did not err when considering a borderline age situation, and substantial evidence supports the ALJ's finding that a non-mechanical application of a higher age category is not warranted in this case.

### B.    Evaluation of Dr. Marrero's Opinion

Plaintiff claims that the ALJ failed to apply the correct legal standard to consultative examination Kamir Marrero, Psy.D.'s opinion. (Doc. 25, p. 15). Plaintiff argues that the ALJ cherry-picked findings from Dr. Marrero's opinion and overlooked the mental status findings that supported his opinion. (Doc 25, p. 15). Plaintiff also claims that the ALJ's consistency finding was conclusory.

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical

opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a

medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

On July 1, 2020, Dr. Marrero conducted a psychological evaluation of Plaintiff. (Tr. 716-718). After the evaluation, he rendered a medical opinion related to Plaintiff's ability to function:

> Should Mr. Crowl be entitled to benefits he would need assistance in managing his funds. Social functioning is impaired based on his report of problems with interpersonal interactions-conversations. Functional ability appears moderately to severely impaired based on psychological symptomatology.

(Tr. 718).

In the decision, the ALJ summarized Dr. Marrero's evaluation findings:

> On a follow up psychological consultative report[,] the claimant report[s] his mental symptoms were marked by depressed mood, anhedonia, weight gain, feelings of worthlessness and guilt, racing thoughts, anxiety over multiple matters, loss of energy, problems with concentration, forgetfulness, muscle tension, and insomnia (Ex. 6F/2). He also reports experiencing recurrent panic attacks consisting of palpitations, shortness of breath, shakiness, and chest pain. The claimant relates anxiety symptoms to having to be outside of the home, difficulty with conversations and "things going on in the world." The claimant denied a history of mental health counseling or hospitalization; his symptoms are controlled with medications (Ex. 6F/2). . . .
>
> The follow up psychological consultative report in July 2020 shows the claimant demonstrated an anxious affect, which is consistent with reported mood. His speech is of a normal rate

and volume with clear articulation. He presented with slow thought processes, and was oriented in two spheres. His memory was affected by anxiety and attention and concentration difficulty. Again, his intelligence appears to be within the low average range but his judgment and insight appear to be within normal limits (Ex. 6F/3).

(Tr. 24).

The ALJ found Dr. Marrero's opinion unpersuasive:

Please find the opinion of the psychological consultative examiner at Exhibit 6F [Dr. Marrero's opinion] unpersuasive because the opinion is not entirely consistent with the evidence of record, or even his own notes and observations. While the psychologist indicated that the claimant's functional ability appeared moderately to severely impaired based on psychological symptomatology, he also indicated that the claimant was cooperative (Ex. 4F and 6F). Further, his speech was of a normal rate and volume with clear articulation, despite his intelligence appearing to be within the low average range. Moreover, his judgment and insight appeared to be within normal limits; and the claimant was able to repeat three out of three words immediately. The claimant admitted he has a "good relationship" with both family and friends (Ex. 8E and 6F). Additionally, the claimant does not appear to be receiving any ongoing mental health treatment.

(Tr. 25-26).

The ALJ articulated many reasons to find Dr. Marrero's opinion unsupported by his own evaluation and inconsistent with other medical records. The ALJ considered the entire consultative examination record. The ALJ found Dr. Marrero's opinion that Plaintiff's functional ability was moderately to severely impaired to conflict with Dr. Marrero's finding that Plaintiff was cooperative. (Tr. 25). As the ALJ found, Dr. Marrero noted Plaintiff's speech was of a normal rate and volume

with clear articulation. (Tr 26). And the ALJ also noted that Dr. Marrero found Plaintiff's judgment and insight to be within normal limits. (Tr. 26). Further, the ALJ found Dr. Marrero's opinion regarding moderately to severely impaired social functioning inconsistent with his own notes in which Plaintiff reported he had a "good relationship" with both family and friends. (Tr. 26, 717). The ALJ also found Dr. Marrero's opinion unsupported by the other medical evidence of record because Plaintiff did not appear to be receiving any ongoing mental health treatments, including any mental health counseling, psychiatric treatment, crisis stabilization unit, or psychiatric hospitalization since the alleged onset date. (Tr. 26). The ALJ noted that at most, Plaintiff was prescribed anti-depressants by his primary care specialist. (Tr. 26). Based on the ALJ's reasoning, substantial evidence supports the ALJ's decision to find Dr. Marrero's opinion unsupported by his own records and inconsistent with the other medical evidence and therefore unpersuasive.

Moreover, Plaintiff must do more than point to evidence in the record that supports his allegations. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). He must show the absence of substantial evidence supporting the ALJ's conclusion. *Id.* Further, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if

substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Here, the ALJ's decision is supported by substantial evidence.

## III.   Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on December 22, 2022.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties